MOBILE & GULF NAV. CO. v. SUGAR PRODUCTS CO.

(District Court, S. D. Alabama. April 29, 1919.)

No. 1717.

1. SHIPPING ⬡39—CONSTRUCTION OF CHARTER—DESIGNATION OF LOADING PORT.

A charter for a voyage from one of two named ports, providing that one port shall be declared on signing bill of lading, requires the charterer, who was to furnish the cargo, to designate the port of loading.

2. PRINCIPAL AND AGENT ⬡178(1)—AUTHORITY OF AGENT—NOTICE.

Where agents for the shipper, who negotiated the charter, signed the shipper's name, but quoted its wire as authority, and there was no proof that they had authority to bind the shipper, notice to the agents to designate the port of loading is not sufficient to charge the shipper with demurrage.

3. SHIPPING ⬡173—DEMURRAGE—DELAY IN CLEARANCE.

Where the clearance papers were taken out by the shipper and brought to the master by them, the shipper is liable for any unjustifiable delay in securing the clearance.

In Admiralty. Libel by the Mobile & Gulf Navigation Company against the Sugar Products Company. Decree entered for libelant.

Harry T. Smith & Caffey, of Mobile, Ala., for libelant.

Palmer Pillans and Alexis T. Gresham, both of Mobile, Ala., for respondent.

ERVIN, District Judge. This was a libel in personam, claiming damages in the nature of demurrage for delays caused by the failure of the Sugar Products Company to name a port at which the schooners G. J. Boyce and W. D. Hossack should load a cargo of molasses in barrels, for Mobile, Ala.

It appears that the Sugar Products Company chartered from libelant the two schooners at the same date, through J. W. Somer-

ville & Co., of Gulfport, Miss. The charter is dated March 27, 1918, and, after stating the name of the schooner, recites:

"Now bound to Cienfuegos, Cuba, of the first part and Sugar Products Company, of 69 Wall street, New York, of the second part, * * * for a voyage from the port of Mariel or Bahia Honda, Cuba, to Gulfport, Miss., or Mobile, Ala. (owner's option), one port only to be declared on signing of bills of lading."

The cargo to be transported was molasses in barrels and the charter party agreed on a specific sum to be paid on each barrel of molasses transported. The charter party was signed:

"For Sugar Products Company, per their wire of March 27, 1918. J. W. Somerville & Co."

Each of the charter parties contained the identical stipulations and were signed in the same way.

It appears from the evidence that libelant, after the vessels arrived at Cienfuegos, wrote to Somerville & Co., calling attention to the fact that the vessels were then at Cienfuegos, and would soon be unloaded and ready to report for their molasses cargo. This notification brought on quite a correspondence; Somerville in each instance forwarding letters and telegrams from libelant, received by him, to the Sugar Products Company, and then informing libelant of the statements and requests of the Sugar Products Company. In no instance did Somerville undertake to act on his own initiative without being advised by the Sugar Products Company, or to accept any notification from libelant given directly to him.

In the course of these negotiations, the Sugar Products Company sought to have the charters canceled. This was declined by libelant; the Sugar Products Company then sought to have the vessels sent to Santiago, Cuba, for their cargo. This was refused by libelant, who finally agreed that they would accept the cargo from any good Cuban port to the west of Cienfuegos, but would not go to the eastward, as that would be out of their route to port of discharge. Libelant notified Somerville on April 24th, by letter, that the vessels would be ready in a few days to proceed to port of loading, and asked what port they should proceed to. This was one of the several notifications to the same effect given by libelant to Somerville & Co., who finally requested libelant to take up the matter directly with the Sugar Products Company in New York, and Somerville forwarded to the Sugar Products Company the information contained in libelant's letter of April 24th, and it appears that this information was received by the Sugar Products Company on April 27th. On April 29th libelant wired the Sugar Products Company in New York, as follows:

"Schooners W. D. Hossack and G. J. Boyce under charter to you to load molasses now at Cienfuegos, Cuba, awaiting orders. Must have loading point named at once. Advise what port and to whom they shall report."

On April 30th the Sugar Products Company wired libelant in Mobile:

"Please instruct the masters schooners Hossack Boyce wire Sugar Products Company, Havana, for loading points."

On the same day, April 30th, libelant wired the Sugar Products Company, Havana:

"Advise where and who will load schooners Hossack-Boyce with molasses."

It appears from the evidence that libelants never received a reply which was sent by the Sugar Products Company from Havana, stating where the schooner should proceed for cargo.

On May 2d libelant again wired the Sugar Products Company, New York:

"Have cabled Sugar Products Company, Havana, for loading point Hossack-Boyce. Cannot get any reply. These vessels ready, waiting orders where to proceed for cargo. Will claim demurrage for all time lost on this account. Must have information at once."

To this, on May 3d, the Sugar Products Company wired libelant:

"Providing you waive all rights demurrage to date, will load smaller vessel Bahia Honda, larger one Havana."

On the same date, May 3d, libelants replied by wire to Sugar Products Company, New York:

"Your wire. We have exercised every effort to avoid demurrage, and we see no reason why we should waive our rights of charter party. Unless we hear from you contrary by to-morrow noon, we shall order Boyce Bahia Honda, Hossack Havana for your loading."

On May 4th the Sugar Products Company wired libelant at Mobile:

"Advise us when Hossack-Boyce would be ready to load. For intelligent answer your cable."

To this, on May 5th, libelant replied:

"Hossack-Boyce now ready Cienfuegos awaiting order, advise."

On May 6th the Sugar Products Company, Havana, wired libelant at Mobile:

"Send Hossack Boyce Havana."

This was a cablegram, which the testimony shows was not received by libelant.

Again, on May 8th, the Sugar Products Company wired from Havana to libelant at Mobile:

"Cable 6th. Send both Havana."

There were also certain cables offered in evidence, passing between the Sugar Products Company at Havana and New York.

On May 9th libelant wired the captain of the schooners at Cienfuegos to report to the Sugar Products Company at Havana to load molasses for Mobile.

[1] The first question to be determined under the contentions made by the parties in this case is the construction of the terms written into the charter party for the voyage—

"from the port of Mariel or Bahia Honda, Cuba, to Gulfport, Miss., or Mobile, Ala. (owner's option), one port only to be declared on signing the bills of lading."

It is conceded by both parties that the latter part of this statement gives to the owner of the vessel the option to deliver the cargo either to Gulfport, Miss., or Mobile, Ala., but the question arises as to who has the option as to where the vessel shall load, whether at Mariel or Bahia Honda. Neither the court nor the proctors have been able to find any direct authority on this question. I shall therefore rule on it as one of first impression.

As the charterer was to provide the cargo for the vessel, it is manifest to me that the option as to port of loading was put into the charter party for the benefit of the charterer, so that he might direct the vessel to the port at which he had assembled his cargo. I therefore hold that the duty was on the charterer to name the port of loading. It was therefore the duty of the charterer, when he knew the vessels would shortly be ready, and was asked as to which port the vessel should proceed, to inform the vessel promptly, so that it could proceed without delay.

[2] It is contended in this case that Somerville & Co. were the agents of the Sugar Products Company, and notice to Somerville & Co. was all that was necessary. Somerville & Co. signed the charter party for the Sugar Products Company, but they are careful to show, in signing it, where their authority to do so comes from, namely, "per their wire of March 27, 1918." There is no direct proof of the authority of Somerville & Co. to bind the Sugar Products Company, nor to receive any notice intended for them. The correspondence shows that, while Somerville & Co. did receive letters and telegrams in reference to having the charter party canceled, and as to when the vessels would be ready, and where they should go for their cargoes, it also shows that in no instance did Somerville & Co. undertake to act without first submitting the request or notification to their principals. I do not think, therefore, that Somerville & Co. were in a position to bind the Sugar Products Company by having a notice served upon Somerville & Co. which was intended for the Sugar Products Company.

The first definite intimation which was conveyed to the Sugar Products Company that these vessels were ready to proceed for their cargoes was by the wire of libelants to them, dated April 29th, and I think they had received from Somerville & Co. sufficient notification that libelants were insisting upon the performance of their charters, and that it was their duty to answer this wire at once. Instead of doing so, they sought to shift the responsibility for giving this information to their Havana office, and libelants did not receive the delayed notifications which were apparently sent from the Havana office. I therefore find that the time should begin on the day after the receipt by the New York office of libelants' telegram of the 29th, which would be April 30th, and any delay thereafter would be at the cost of the Sugar Products Company.

The testimony shows that the G. J. Boyce had discharged its cargo, and was ready to proceed for its cargo, some days prior to this time, so that the time of this vessel should begin on April 30th. The tes-

timony further shows that the .Hossack.was not ready to proceed for cargo until May 2d, so its time should begin on May 3d.

[3] The testimony further shows that there was a delay in getting the clearance of these vessels. In this particular matter the testimony is not as clear as I would like to have had it, for it did not show whether the delay was caused by the fault of the captain or of the shipper, but all the testimony I have is that of the captain that the clearance papers were taken out by the shipper and brought to him by them. From this testimony, the clearance was made by the shipper, and, if there was an unjustifiable delay, it would appear that . this delay was caused by the shipper.

Therefore the Sugar Products Company should be charged with whatever delay there was in having the vessel cleared. I therefore find that the Hossack is entitled to 7 days' and the Boyce to 18 days' time.

A decree will accordingly be entered, appointing a master to ascertain the damages.